UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| JAMES E. KILMER, JR., ) | |
| ) | |
| Plaintiff, ) | Case No. 1:15-cv-62 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On September 11, 2012, plaintiff filed his application for DIB benefits. (PageID 160-61). He alleged a March 29, 2012, onset of disability. (PageID.160). Plaintiff's claim was denied on initial review. (PageID.94-103). On July 23, 2013, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (PageID.59-88). On August 23, 2013, the ALJ issued his decision finding that plaintiff was not disabled. (PageID.45-54). On November 26, 2014, the Appeals Council denied review (PageID.29-31), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits. He asks the court to overturn the Commissioner's decision on the ground that the ALJ violated the treating physician rule in the weight he gave to the opinions of Vicente Gracias, M.D. (Statement of Error, Plf. Brief at 1, ECF No. 11 , PageID.414).

Upon review of the record, and for the reasons stated herein, I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the Court's review is limited. *Buxton*, 246 F.3d at 772. The Court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d

830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from March 29, 2012, through the date of the ALJ's decision. (Op. at 3, PageID.47). Plaintiff had not engaged in substantial gainful activity on or after March 29, 2012, his alleged onset of disability. (*Id.*). Plaintiff had the following severe impairment: degenerative disc disease. (*Id.*). Plaintiff did not

have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 4, PageID.48).

The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work with the following exceptions:

> [T]he claimant is limited to standing and walking six hours in an eight-hour workday and sitting for six hours in an eight-hour workday. In addition, the claimant is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently. Moreover, the claimant is limited to never climbing ladders, ropes or scaffolds, and occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.

(Op. at 4, PageID.48). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible. (*Id.* at 5-8, PageID.49-52). Plaintiff was unable to perform any past relevant work. (*Id.* at 8, PageID.52). He was 50 years old as of his alleged onset of disability and 51 years old as of the date of the ALJ's decision. Thus, at all times relevant to his claim for DIB benefits, plaintiff was classified as an individual closely approaching advanced age. (*Id.*).

The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 33,600 jobs in Michigan that the hypothetical person would be capable of performing. (*Id.* at 8-9, PageID.52-53; *see* PageID.80-82). The ALJ found that this constituted a significant number of jobs. Using Rule 202.14 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (Op. at 9-10, PageID.53-54).

1.

Plaintiff argues that the ALJ violated the treating physician rule in the weight he gave to the opinions of Vicente Gracias, M.D. (Plf. Brief at 5-10, Page ID.418-23; Reply Brief at 1-5, Page ID.437-41). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. See 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[1] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

---

[1] "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 404.1527(d)(3); *see Blankenship v. Commissioner*, 624 F. App'x 419, 429-30 (6th Cir. 2015).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met: (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. § 404.1527(c)(2)).

The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health &*

*Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The period at issue on plaintiff's claim for DIB benefits ran from his alleged onset of disability, March 29, 2012, through August 23, 2013, the date of the ALJ's decision.[2] March 29, 2012, was the date of the plaintiff's back surgery.

The ALJ noted that, before surgery, plaintiff's treating physicians indicated that plaintiff was capable of working with a restriction against lifting more than 20 pounds and that after surgery, plaintiff showed normal findings and reported that his condition had improved:

> Julienne Little, D.O., Duane Wisk, D.O., and Kelly de Longpre, M.D., the claimant's treating physicians from Med-1 Leonard noted that throughout October and November 2011 and January and February 2012, that the claimant was to return to work with the restrictions of no lifting over twenty pounds (Exhibit 2F) [PageID.293-307]. These opinions are given great weight as they are supported by the above medical evidence and consistent with the residual functional capacity. The medical records continued to show normal findings and the claimant reported he improved post lumbar laminectomy (Exhibit 4F/4, 5, 6, 7) [PageID.328-31].

(Op. at 7, PageID.51).

---

[2] Much of the evidence filed in this case falls outside the relevant time period. This evidence is minimally probative and is considered only to the extent that it illuminates the claimant's condition during the relevant period. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Van Winkle v. Commissioner*, 29 F. App'x 353, 358 (6th Cir. 2002). Plaintiff had a remote history of back surgery on November 16, 2000, by David Lowrey, M.D. (PageID.74, 284-88, 368-75). Plaintiff suffered a work-related injury in October 2011, and he pursued a worker's compensation claim. During the period before his surgery on March 29, 2012, plaintiff continued to perform his job at a trucking company with a restriction against lifting more than 20 pounds. (PageID.339, 345-48). On January 16, 2013, plaintiff settled his worker's compensation claim against his former employer. (PageID.71-72, 184).

On January 9, 2012, plaintiff reported to Keith Javery, D.O., that he had aching back pain that radiated into his left leg and that his pain was "5/10 on a scale of 1 to 10." (PageID.313). Plaintiff denied experiencing fatigue, change in appetite, or sleeping problems. He denied any change in alertness, anxiety, depression or hallucinations. (PageID.314). Plaintiff was well nourished, well developed, alert and in no acute distress. His straight leg raising tests were negative bilaterally. He had a moderately reduced spine range of motion and paraspinal muscle tenderness. His concentration and attention were normal. He had normal muscle function and no atrophy. (PageID.314-15).

Dr. Javery gave plaintiff a transforaminal epidural steroid injection. (PageID.316). On his return visit to the Javery Clinic on February 8, 2012, plaintiff advised Physician's Assistant Aaron Greene that his pain was "more controlled" than it had been during his previous visit. (PagID.317). Physician's Assistant Greene recommended another epidural steroid injection. Progress notes indicate that the procedure was scheduled for plaintiff's next appointment. (PageID.320). There are no subsequent treatment records from the Javery Clinic.

On March 20, 2012, James Wessinger, M.D., noted that plaintiff was employed as a mechanic for a trucking company, ALTL, Inc. Plaintiff was "doing his job with a 20 pound lifting restriction[]." (PageID.345). Wessinger noted that Dr. Javery had referred plaintiff to Dr. Gracias. Dr. Gracias had interpreted an MRI as showing a disc herniation at L3-L4 on the left side and had recommended a laminectomy and disc excision. Dr. Wessinger agreed that the MRI showed evidence of a disc

herniation at L3-L4. He offered his opinion that this was a work-related injury and agreed with the surgical treatment that Dr. Gracias recommended. (PageID.345-48).

On March 29, 2012, Dr. Gracias performed a "left L3 hemisemilaminectomy, excision herniated disk 3-4 and decompression of L4." (PageID.340-44, 352-54, 360-61). This administrative record is unusual in that plaintiff elected not to submit any of the underlying progress notes generated by Dr. Gracias during the course of post-operative treatment. Plaintiff did submit a series of letters from Dr. Gracias to Dr. Javery in support of his claim for DIB benefits.[3]

On April 9, 2012, Dr. Gracias wrote a letter to Dr. Javery. (PageID.332). Gracias reported that plaintiff's radicular pain was "gone." Plaintiff's surgical wound was "well healed." (PageID.332).

On May 21, 2012, Dr. Gracias wrote another letter to Dr. Javery. (PageID.331). He noted that plaintiff was happy with the results of surgery and that his sharp, constant radicular pain was gone. He summarized plaintiff's

---

3 Plaintiff also filed a letter written to Dr. Javery on March 5, 2012, about three weeks before plaintiff's surgery. (PageID.333-34). Plaintiff reported low back and radicular pain. He indicated that he was working and had injured himself at work about 6 months earlier while moving tires. He was alert and oriented. His recent and remote memory were within normal limits. His attention span and concentration were "quite good." Dr. Gracias suspected that plaintiff's back and leg pain were caused by a herniated disc and he recommended surgical intervention. (*Id.*). Dr. Gracias indicated that plaintiff could return to work on March 5, 2012. He restricted plaintiff to no lifting over 20 pounds for 2 months. He did not impose any restriction on the number of hours or days that plaintiff could work. He did not impose any restrictions against bending, twisting, or stretching. (PageID.339).

condition as follows: "Motor, sensory and deep tendon reflex exams are within normal limits. There is no Babinski, no clonus. Straight leg raising was negative. His bowel and bladder control is good." (*Id.*). Gracias indicated that plaintiff was capable of returning to work as a diesel mechanic at the trucking company ATL, Inc. on May 29, 2012, with restrictions for 12 weeks of no lifting over 20 pounds and no bending, twisting, or stretching below the waist. (PageID.338).

On June 27, 2012, Dr. Gracias wrote his third post-operative letter to Dr. Javery. (PageID.330). Dr. Gracias noted that plaintiff as "doing well." He made the following observations regarding plaintiff's condition: "His motor, sensory and deep tendon reflex exams are all within normal limits. His radicular pain has cleared up. He is happy with the results of the surgery. His bowel and bladder control is good. Straight leg raising was negative." Plaintiff stated that he was afraid to go back to work at the trucking company without restrictions. In response to plaintiff's concerns, Dr. Gracias elected to keep plaintiff on restrictions for another six weeks. (PageID.330, 337).

On June 27, 2012, Dr. Gracias indicated that plaintiff was capable of returning to work as a mechanic with restrictions. The restrictions limited him for six weeks to lifting no more than 20 pounds and no bending, twisting, or stretching below the waist. (PageID.337).

On August 8, 2012, Dr. Gracias wrote a fourth post-operative letter to Dr. Javery. (PageID.329). Plaintiff reported that he was happy with the results of his recent lumbar laminectomy. His motor, sensory and deep tendon reflex

examinations were within normal limits. His straight leg raising tests were negative bilaterally. Plaintiff reported that he was afraid to go back to work at his job without restrictions. Dr. Gracias said that "this might be reasonable because of his past history." (PageID.329). Dr. Gracias indicated that plaintiff was capable of returning to work. For a period of 8 weeks he limited plaintiff to lifting no more than 20 pounds and no bending, twisting, or stretching below the waist. (PageID.336).

On October 3, 2012, Dr. Gracias wrote a fifth post-operative letter to Dr. Javery. Dr. Gracias stated that plaintiff's "motor, sensory and deep tendon reflex exams [were] within normal limits." His straight leg raising tests were normal. Plaintiff retained good bowel and bladder control. (PageID.328). On October 2, 2012, Dr. Gracias indicated that plaintiff was capable of returning to work with a restriction of "No lifting over 20 lbs[.] for 4 months." (PageID.335). Dr. Gracias did not impose any restriction regarding bending, twisting, or stretching. He did not place any limitations on the number of hours or the number of days per week that plaintiff was capable of working. (*Id.*).

On January 29, 2013, Dr. Gracias marked boxes on a one-page RFC questionnaire suggesting a significantly greater level of restriction than he had ever previously indicated, such as imposing a restriction against lifting more than 10 pounds. (PageID.362). Dr. Gracias provided no explanation why any greater level of restriction than he had earlier imposed would be appropriate. Dr. Gracias failed to reference any evidence supporting greater functional restrictions. As previously

noted, this administrative record does not contain any post-operative progress notes from Dr. Gracias. There is no evidence that any objective testing was performed from October 3, 2012, through January 3, 2013.

The ALJ questioned plaintiff in an attempt to determine if there had been any recent injury or exacerbation that would support a restriction against lifting more than 10 pounds:[4]

> Q    I wanted to ask you about your abilities. You mentioned that you agree with Dr. Gracias who at Exhibit 7F said that you could lift up to 10 pounds occasionally. Is that – does that seem accurate to you?
>
> A    Yes. That's pretty accurate.
>
> Q    The reason I wanted to ask you about that is because he had previously said 20 pounds a couple of times and you had said when you filled out a function report 20 pounds.
>
> A    Right. That's what he had – at that time that's what he had for me at my restrictions.
>
> Q    Had things gotten worse. What happened there?
>
> A    It kind of – its, kind of, up and down all the time but any lifting at all, almost any weight is what takes and starts triggering my back, lifting or twisting down to lift anything. And I believe that's why he put the 10 pound level there.
>
> Q    So, it's not that it's gotten worse; it's just staying the same?
>
> A    It' pretty much stayed the same.

(PageID.74-75).

---

[4] Given plaintiff's age, if he was restricted to lifting no more than 10 pounds and lacked transferable work skills, the grids would direct a finding of disability. *See, e.g., Blankenship v. Commissioner*, 624 F. App'x at 428; *Ferrell v. Commissioner*, No. 1:14-cv-1232, 2016 WL 316724, at * 6 (W.D. Mich. Jan. 27, 2016); *Cutcher v. Commissioner*, No. 4:14-cv-1958, 2015 WL 5233244, at * 8 (N.D. Ohio Sept. 8, 2015).

The ALJ found that the more significant restrictions that Dr. Gracias suggested in January 2013 were inconsistent with his earlier restrictions, were not supported by any explanation for the change in his opinion, and were not consistent with the medical record as a whole. (*See* Op. at 7, PageID.51). I find no violation of the treating physician rule.[5] The ALJ gave good reasons for giving great weight to Dr. Gracias's opinions regarding plaintiff's functional restrictions through October 2012, and much less weight to his unexplained and unsupported restrictions found in the RFC questionnaire.

## 2.

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ's treatment of Dr. Gracias's opinion was "inherently unclear" and fails to permit meaningful appellate review. (Plf. Brief at 7-10, PageID.420-23). Plaintiff argues that the ALJ erred because he "did not address the statement made by Dr. Gracias's October 2012 treatment note [sic] that stated, '[a]t this time because of his past history, I think it would be reasonable to keep him on the same restrictions, so I will give him another slip to be on restrictions for the next four

---

[5] ALJs are not bound by conclusory statements of treating physicians where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. *See Buxton v. Halter*, 246 F.3d at 773; *see also Stewart v. Commissioner*, No. 1:14-cv-614, 2015 WL 5608228, at * 7 n.4 (W.D. Mich. Sept. 21, 2015). "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best[.]" *Smith v. Commissioner*, No. 13-cv-12759, 2015 WL 899207, at * 13 (E.D. Mich. Mar. 3, 2015); *see also Ashley v. Commissioner*, No. 1:12-cv-1287, 2014 WL 1052357, at * 8 n. 6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").

months and see how he does.'" (Plf. Brief at 8, PageID.421) (citing Tr. 295, found at PageID.328).

As previously noted, plaintiff did not submit any progress notes from Dr. Gracias. Plaintiff's attorney did not present any argument to the ALJ based on the October 2012 letter. (PageID.59-88). He did not submit any affidavit from Dr. Gracias establishing that the functional restrictions that Dr. Gracias imposed on October 3, 2012 (PageID.335), were deficient or inaccurate because the earlier, temporary, post-operative restriction regarding bending, twisting, or stretching had been eliminated. The ALJ did not commit error when he made a factual finding regarding plaintiff's RFC that was consistent with the actual restrictions Dr. Gracias imposed on October 3, 2012, which did not include limitations regarding bending, twisting, or stretching. (PageID.335).

Plaintiff argues that the ALJ's decision should be overturned because he stated that the RFC questionnaire received "partial weight," but he failed to explain which part. (Plf. Brief at 9-10, PageID.422-23; Reply Brief at 4-5, PageID.440-41). On the present record, the ALJ could have rejected all the unsupported conclusions found in the RFC questionnaire without committing error. The questionnaire responses were utterly conclusory. The ALJ provided an adequate explanation supporting his factual finding regarding plaintiff's RFC and his finding that plaintiff retained the RFC for a limited range of light work is supported by more than substantial evidence.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: February 21, 2016          /s/   Phillip J. Green
                                  United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).